IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT JONES,                              *

    Petitioner,                          *          Civil Action No. RDB-13-1255

    v.                                   *          Criminal Action No. RDB-10-0232

UNITED STATES OF AMERICA,                  *

    Respondent.                          *

*    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM OPINION**

The *pro se* petitioner Robert Jones (hereinafter "Petitioner") has filed a Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 150), pursuant to 28 U.S.C. § 2255, a Supplement to the Motion to Vacate, Set Aside or Correct Sentence (ECF No. 155), and a Motion to Amend the Motion to Vacate (ECF No. 160).  Petitioner challenges his sentence on the grounds that he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and that the sentence imposed by this Court was in violation of the Fifth and Sixth Amendments to the United States Constitution.  Petitioner alleges that his counsel was ineffective on two grounds, namely: (1) that defense counsel failed to independently investigate the facts, witnesses, and legal authority applicable to the case, where such an investigation could have yielded material information regarding Petitioner's decision to plead guilty; and (2) that defense counsel failed to file a Motion to Dismiss the Superseding Indictment on the ground that the robbery did not interfere with interstate commerce and is thus not subject to a charge of Conspiracy to Commit Hobbs Act Robbery in violation of 18 U.S.C. § 1951.  Petitioner also alleges in the Supplement to the Motion to Vacate, Set Aside, or Correct Sentence that this Court erred in increasing his sentence based on facts contained in dismissed counts of the Superseding Indictment, which were not

admitted to or found by a jury of his peers.  Petitioner's claim of ineffective assistance of counsel fails to show either deficiency on the part of defense counsel or prejudice sufficient to be the but-for cause of Petitioner's sentence.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Moreover, this Court did not violate Petitioner's Fifth and Sixth Amendment rights by exceeding the permissible scope of inquiry into sentencing factors.  *See Alleyne v. United States*, 133 S.Ct. 2151 (2013); *Descamps v. United States*, 133 S.Ct. 2276 (2013).  For the following reasons, Petitioner's Motion to Vacate is DENIED.

<u>BACKGROUND</u>

Petitioner has acknowledged under oath that he participated in the planning and commission of an armed robbery on April 17, 2010.  Court Transcript, 21, ECF No. 141; Plea Agreement, 9, ECF No. 101.  On April 16, 2010, Petitioner, along with two other individuals, Brandon Carter (hereinafter "Carter") and Jerrell Taylor (hereinafter "Taylor"), began discussing plans to burglarize the home of Sandrea Fulton (hereinafter "Ms. Fulton"), located at 2325 Annapolis Road in Westport, Maryland, believing that a local drug dealer, the boyfriend of Ms. Fulton, stored drugs and money within the residence.  *Id.*

On April 16, 2010, Petitioner and Taylor encountered Carter and inquired as to whether Carter would join them in their plan to commit the robbery.  *Id.*  Upon agreeing, all three individuals entered Carter's car and drove to the residence of a girlfriend of Petitioner.  *Id.*  Thereafter, the three individuals drove to Westport, where they were able to procure a handgun and a change of clothes. *Id.*  Petitioner and the other co-conspirators then parked the automobile within walking distance of the residence and attempted to gain entry.  *Id.*  Carter was eventually able to gain access to the home through a window, whereby he unlocked the front door for Petitioner and Taylor.  *Id.*  Having entered the home, the three individuals encountered Ms. Fulton and her infant child in a second floor bedroom.  *Id.*  The three individuals then attempted to subdue Ms. Fulton by brandishing a .22

2

caliber semi-automatic handgun. *Id.* While Taylor held Ms. Fulton at gunpoint, Petitioner demanded that she tell them where the drugs and money were located, to which she responded that she did not know. *Id.* Petitioner then directed Taylor to take Ms. Fulton downstairs while Carter looked for the items on the second floor. *Id.* Throughout the encounter, Petitioner repeatedly asked Ms. Fulton where the drugs were and when her boyfriend would return. *Id.* When Ms. Fulton stated that her boyfriend would be returning soon, Petitioner left the home in order to retrieve a car while his co-conspirators continued searching the residence. *Id.*

When the police arrived, Carter and Taylor fled into an upstairs bedroom and attempted to flee through the window. *Id.* During their attempted escape, one of the individuals dropped the handgun on top of some clothes that had been removed during the ransacking of the residence. *Id.* at 10. Both individuals were apprehended shortly after attempting to leave through the window. *Id.* at 9. Carter was apprehended wearing only a single shoe, the other shoe having been left on the awning of the residence. *Id.* at 10. Also located on the awning were two bags and a glass jug containing marijuana. *Id.* The investigation revealed that the individuals had taken approximately two hundred fifty dollars ($250) in currency from Ms. Fulton in addition to the aforementioned marijuana. *Id.*

Petitioner's co-defendants, Taylor and Carter, were charged with federal offenses, including Conspiracy to Commit Hobbs Act Robbery, to which they pled guilty. Court Transcript, 45, ECF No. 137. Both agreed to cooperate with authorities, whereby they testified in the federal grand jury and identified Petitioner as the instigator of the robbery. Court Transcript, 7–8, ECF No. 141. They additionally confirmed through their guilty pleas that the object of the robbery was to procure drugs and cash that they believed were inside the residence. *See USA v. Jones et al.,* RDB-10-232, Plea Agreement and Supplement, ECF Nos. 72, 73; *USA v. Jones et al.,* RDB-10-232, Plea Agreement and Supplement, ECF Nos. 82, 83. Ms. Fulton also testified before the grand jury that she could

identify Petitioner as the individual who repeatedly demanded that she tell him where the drugs and money were located.  Court Transcript, 8–10, ECF No. 140.

On May 13, 2010, the grand jury returned a Superseding Indictment[1] charging Petitioner with Conspiracy to Commit Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a) (Count One), Possession and Brandishing of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2 (Count Two), and Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g) and 18 U.S.C. § 2 (Count Three).  Superseding Indictment, ECF No. 5.  Notably, if found guilty of Possession and Brandishing of a Firearm in Furtherance of a Crime of Violence, Petitioner would have faced a mandatory consecutive sentence and an Advisory Guideline range of thirty years to life.  Court Transcript, 49, ECF No. 137.

On November 8, 2010, Petitioner and defense counsel both signed the plea agreement offered by the United States Attorney's Office for the District of Maryland, which stipulated that Petitioner would plead guilty to Count One of the forgoing Superseding Indictment in exchange for the dismissal of Counts Two and Three.  Plea Agreement, ECF No. 101.  The signature page, to which Petitioner and defense counsel affixed their signatures, stated that Petitioner reviewed and voluntarily agreed to the plea agreement.  *Id.* at 8.  As part of the signature page, Petitioner also agreed that he was satisfied with the representation provided by his attorney.  *Id.*

Petitioner entered his guilty plea pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  *Id.* at 5.  By doing so, Petitioner acceded to a total aggregate sentence of between seventeen and twenty years.  *Id.*  On January 28, 2011, Petitioner filed a *pro se* Motion to Withdraw a Plea of Guilty in reference to the alleged failure of defense counsel to inform him of the

---

[1]The first Indictment in this case — issued on May 6, 2010 — charged co-conspirator Jerrell Taylor with Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 2.  Indictment, 1, ECF No. 1.  Petitioner and Carter were only charged following the issuance of the Superseding Indictment.  *See* Indictment, ECF No.1; Superseding Indictment, ECF No. 5.  Taylor was also charged with additional offenses in the Superseding Indictment, including: (1) Conspiracy to Commit Hobbs Act Robbery in violation of 18 U.S.C. §1951(a) and (2) Possession and Brandishing of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2.

proper sentencing guidelines. Motion to Withdraw Plea of Guilty, ECF No. 118. Petitioner later withdrew his motion on February 3, 2011, upon the reduction of the sentence to fifteen years or one hundred eighty months with credit for time served from May 18, 2010.   Court Transcript, 5–7, ECF No. 137; Order as to Motion to Withdraw Plea of Guilty, 1, ECF No. 120. The sentence was reduced after this Court determined that the original Advisory Guideline range of seventeen to twenty years was "greater than necessary to achieve the purposes of sentencing." Court Transcript, 4–7, ECF No. 137.   Upon a reduction outside of the agreed-upon plea agreement range of seventeen to twenty years, the government was given the option under Rule 11(c) of the Federal Rules of Criminal Procedure to withdraw from the plea agreement but declined to do so.   Court Transcript, 4, ECF No. 137.   Following the entry of the judgment, Petitioner filed a Notice of Appeal on June, 16, 2011, seeking to appeal the final judgment of this Court.   Notice of Appeal – Final Judgment, ECF No. 130.   Petitioner also filed a Motion to Vacate under 28 U.S.C. § 2255 on August 1, 2011, claiming that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment.   Motion to Vacate, 9, ECF No. 136.   The Motion to Vacate was dismissed without prejudice by this Court on August 15, 2011, citing Petitioner's direct appeal. Order Dismissing Without Prejudice Motion to Vacate, ECF No. 138.

Following the dismissal of Petitioner's direct appeal on January 31, 2012 by the United States Court of Appeals for the Fourth Circuit, Petitioner re-filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, again claiming that he was denied his Sixth Amendment right to effective counsel.   Order of USCA, 1–2, ECF No. 142; Motion to Vacate, ECF No. 150.   Petitioner then amended the Motion to Vacate on July 24, 2013 to include the allegation that the sentence rendered by this Court violated the Fifth and Sixth Amendments.   Amendment Supplement, ECF No. 155.   Finally, Petitioner filed a Motion to Amend the Motion to Vacate on June 19, 2014,

alleging an additional ground for relief. The forgoing opinion addresses the Petitioner's Motion to Vacate, the accompanying supplement to that Motion, and the pending Motion to Amend.

STANDARD OF REVIEW

This Court recognizes that Petitioner is *pro se* and has accorded his pleadings liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (b) the court lacked "jurisdiction to impose the sentence, . . . [(c)] the sentence was in excess of the maximum authorized by law, or [(d) the sentence] is otherwise subject to a collateral attack." 28 U.S.C. § 2255. "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428 (1962)).

To state a claim for relief under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance" prong, of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, courts observe a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. The second, or "prejudice" prong, requires that defendant demonstrate that his counsel's errors deprived him of a fair trial. *Id.* at 687.

In applying the *Strickland* test, the United States Court of Appeals for the Fourth Circuit has noted that there is no reason to address both prongs if the defendant makes "'an insufficient showing on one.'" *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at

697).  Thus, ineffective assistance of counsel claims may be disposed of based solely on a deficiency in satisfying either the "performance" prong or the "prejudice" prong.  *See Strickland*, 466 U.S. at 697.  The Fourth Circuit has also noted that the mere possibility of a different trial result does not satisfy the burden of proving prejudice placed on the defendant.  *See Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986).  Additionally, "[i]neffective assistance claims are generally not cognizable on direct appeal . . . 'unless [an attorney's ineffectiveness] conclusively appears from the record.'" *United States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008) (quoting *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999)).  Furthermore, when a defendant alleges ineffective assistance after a guilty plea has been entered, the burden of proving the second prong of prejudice becomes even greater. In *Hooper v. Garraghty*, the Fourth Circuit explained: "Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hooper*, 845 F.2d 471, 75 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## ANALYSIS

Petitioner raises three arguments in his Motion to Vacate.  He levies two claims against his attorney including (1) that defense counsel failed to independently investigate the facts, witnesses, and legal authority applicable to the case, where such investigations could have yielded material information regarding Petitioner's decision to plead guilty; and (2) that defense counsel failed to file a Motion to Dismiss the Superseding Indictment on the grounds that the robbery did not interfere with interstate commerce and is thus not subject to a charge of Conspiracy to Commit Hobbs Act Robbery in violation of 18 U.S.C. § 1951.  Petitioner additionally claims that the increase in sentence imposed by this Court violated the Fifth and Sixth Amendments because the relevant facts were contained in the dismissed counts and not admitted to by the petitioner.  Petitioner finally has filed a Motion to Amend the Motion to Vacate to raise an additional ground for relief.  Finding that none

of these claims have any merit, Petitioner's Motion to Vacate and Motion to Amend are denied.

**I. Defense Counsel's Alleged Failure to Independently Investigate the Facts, Witnesses, and Legal Authority**

Petitioner claims he was denied his right to effective counsel by virtue of defense counsel's failure to interview witnesses and conduct independent investigations into the facts and legal authority. Pet'r's Mot., 5–6, ECF. No. 150. Specifically, Petitioner contends that if defense counsel would have interviewed his co-conspirators (Taylor and Carter) and the Victim (Ms. Fulton), he would have learned that the robbery had "nothing to do with drugs" and been able to file a Motion to Dismiss based on a lack of subject matter jurisdiction. *Id.* at 6. In order to succeed on a claim of ineffective assistance of counsel, Petitioner must be able to illustrate specific instances of misconduct. *Id.* at 702. As a result, conclusory allegations have been deemed insufficient to raise cognizable claims of ineffective assistance of counsel. *Unites States v. Hawkins*, 531 Fed.Appx. 342, 345 (4th Cir. 2013) (quoting *United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007)). In order to satisfy the "deficiency" element, Petitioner must show that defense counsel failed to abide by the requisite standard of professional norms. *Strickland*, 466 U.S. at 688. In accordance with this standard, this Court need only find that an attorney's actions "might be considered sound strategy." *Id.* at 689. In order to satisfy the "prejudice" element, Petitioner must establish that defense counsel's actions "were so serious as to deprive the defendant of a fair trial." *Id.* at 687. In the context of an attorney's failure to investigate, there is "no special amplification" regarding an attorney's duties. Therefore, to meet the requisite standards of professional conduct, an attorney need only make "reasonable investigations or … a reasonable decision that makes particular investigations unnecessary." *Id.* at 690, 680.

In *Strickland*, the petitioner raised an ineffectiveness of counsel claim after defense counsel opted not to interview character witnesses which would have ostensibly bolstered sentence mitigation. *Id.* at 699. The Supreme Court refused to find either deficiency or prejudice due to

defense counsel's adherence to a reasonable trial strategy and the absence of any effect the interviews would have had on the outcome of the case. *Id.* at 699–700. In terms of deficiency, the Court found that the petitioner's sentence likely would be reduced more by the acceptance of responsibility than by opening up character evidence. *Id.* at 718. Moreover, the decision by defense counsel not to call character witnesses was deemed to be a strategic move under the assumption that the evidence of prior convictions brought during cross-examination would likely be more harmful than the proposed testimony of the character witnesses would be beneficial. *Id.* at 673. In terms of prejudice, the Court found that there was scant evidence that the investigations and interviews would have yielded information that could have been material in reducing the sentence. *Id.* at 677. The interviews primarily constituted character evidence, which, if offered, provided nothing which could not be gleaned from the Rule 11 colloquy. *Id.*

Before examining the evidence in this case under the *Strickland* standard, it should be noted that this Court performed a thorough and complete Rule 11 colloquy in order to determine that Petitioner was competent and entering a guilty plea knowingly and voluntarily. Ct. Tr., 32–40, ECF No. 137; Ct. Tr., 19–47, ECF No. 141. The record reflects that Petitioner was judged to be "fully competent and capable of entering an informed plea". Ct. Tr., 47, ECF No. 141. The transcript also confirms that Petitioner answered in the affirmative when asked whether he was satisfied with defense counsel's representations and advice. Ct. Tr., 23, ECF No. 141. These statements are considered binding, as they were given under oath. Ct. Tr., 22, ECF No. 141. In *Ford v. United States*, No. RDB-12-2848, 2013 U.S. Dist. WL 3155447 (D. Md. June 19, 2013), this Court noted that there exists a "strong presumption that [a] plea is final and binding when an appropriate Rule 11 of the Federal Rules of Criminal Procedure guilty plea colloquy is conducted." *Ford,* 2013 U.S. Dist. WL 3155447 at *4 (citing *United States v. Lambey*, 974 F. 2d 1389, 1394 (4th Cir. 1992)).

Much like the petitioner in *Strickland*, Petitioner fails to meet either element of the *Strickland*

inquiry. In terms of deficiency, there is no specific event cited by Petitioner which would overcome the presumption of competence afforded to defense counsel. At the outset, it is apparent that the contention that the robbery was not undertaken in order to procure drugs is contradicted by every piece of evidence, save the post-sentencing affidavit of the Petitioner. *See* Plea Agreement, 9–10, ECF. No. 101; Pet'r's Mot., 17–18, ECF. No. 150. Taylor and Carter testified both in their grand jury testimony and guilty pleas that drugs were the primary motivation for undertaking the robbery. *See USA v. Jones et al.,* RDB-10-232, Plea Agreement and Supplement, ECF. Nos. 72, 73; *USA v. Jones et al.,* RDB-10-232, Plea Agreement and Supplement, ECF. Nos. 82, 83.[2] Given the drug related motivations were corroborated through the testimony of his co-defendants and the victim, there was little if any reason for defense counsel to question their validity and pursue an interview. Moreover, defense counsel characterized the information given by Taylor and Carter in their grand jury testimony as both "devastating" and "quite believable," making the pursuance of a guilty plea a sound strategic approach. Ct. Tr., 8, ECF No. 141. Notably, Petitioner was permitted to view the grand jury testimony and decided to enter a guilty plea only after seeing it. Ct. Tr. 10, 15–16, ECF No. 141. Therefore, without any hint as to the material information an interview could procure, Petitioner's claim is a conclusory allegation which fails to state a cognizable claim for relief.

Likewise, Petitioner fails to satisfy the prejudice prong of *Strickland* because there is no evidence that failing to interview the three witnesses was a but-for cause of the proceeding's outcome. Specifically, it remains unlikely that the testimony of his co-conspirators — supporting Petitioner's contention that drugs were not the primary motivation for the robbery — would have changed. Even assuming, *arguendo*, that Petitioner's co-conspirators changed their testimony, they would still have to contend with the admissions made during their grand jury hearing implicating

---

[2] The only indication that either of the co-conspirators would change their testimony came after the trial and were solely supported by the Petitioner's affidavit. *See* Pet'r's Mot., 17–18, ECF. No. 150; *USA v. Jones et al.,* RDB-10-232, Plea Agreement and Supplement, ECF. Nos. 72, 73; *USA v. Jones et al.,* RDB-10-232, Plea Agreement and Supplement, ECF. Nos. 82, 83. Therefore, it is a bald assertion made after the fact of which defense counsel could not have been aware.

Petitioner and revealing the drug related motivations of the robbery. Moreover, it is probable that the items stolen from the residence and the testimony of Ms. Fulton were alone sufficient to show that drugs were the primary motivation of the robbery. Given the plethora of evidence against Petitioner and the presumption of validity afforded to guilty pleas, there is no basis to find that defense counsel's failure to interview was a but-for cause of the proceeding's outcome. Therefore, Petitioner fails to meet the heightened standard required to meet the prejudice prong of the *Strickland* test.

## II. Defense Counsel's Alleged Failure to Move to Dismiss the Superseding Indictment on the Ground that Petitioner was not Engaged in Interstate Commerce

Petitioner claims that defense counsel was ineffective in failing to file a Motion to Dismiss the Superseding Indictment on the grounds that the robbery did not interfere with interstate commerce and was thus not subject to a charge of Conspiracy to Commit Hobbs Act Robbery in violation of 18 U.S.C. § 1951. Specifically, Petitioner claims that this Court lacks subject matter jurisdiction due to the fact that the robbery neither affected commerce under the statutory elements, nor satisfied the "substantial effects" test of *U.S. v. Lopez*, 514 U.S. 549 (1995) and *U.S. v. Morrison*, 529 U.S. 598 (2000). A crime covered by the Hobbs Act has two elements: (1) the undertaking of a crime of robbery or extortion (2) that interferes with commerce. *Stirone v. United States*, 361 U.S. 212, 218 (1960). Rather than requiring proof that the defendant intended to affect commerce in the specific instance, the Hobbs Act only demands that the disruption of commerce be the natural result of a robbery or extortion. *United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003) (quoting *U.S. v. Spanglo*, 546 F.2d 1117, 1118–9 (4th Cir. 1976)). The Fourth Circuit has held that the jurisdictional predicate can be met through "proof of possibilities," without identifying the particular commercial movement affected. *U.S. v. Brantley*, 777 F.2d 159, 162 (4th Cir. 1985). The Fourth Circuit has joined a number of other circuits in holding that there must be a nexus "between the extortionate conduct and interstate commerce in order to establish federal jurisdiction," thus demanding "the

connection with or effect on interstate commerce . . . [be] at least a realistic probability at the time of the extortion." *U.S. v. Buffey*, 899 F.2d 1402, 1404 (4th Cir. 1990) (quoting *U.S. v. Elders*, 569 F.2d 1020, 1023–4 (7th Cir. 1977)). This nexus requirement can be satisfied by the "depletion of assets" theory, which holds that the jurisdictional predicate is met where the defendant's actions create a reasonable probability that the assets of an entity engaged in interstate commerce will be depleted. *Elders*, 569 F.2d at 1025.

The issue of nexus in the context of the drug trade was first addressed by the Fourth Circuit in *U.S. v. Williams*, where four individuals conspired to and eventually succeeded in robbing a drug dealer. *Williams*, 342 F.3d at 352. In finding a Hobbs Act violation, the Fourth Circuit held that trade in controlled substances affected interstate commerce, as it was both "economic and interstate in character." *Id.* at 354. Expanding this concept in keeping with the depletion of assets theory, the Fourth Circuit held that because the victim was targeted based on his engagement in the trade — and currency taken from him rationally could constitute the proceeds of his business — the government had a sufficient nexus to constitute the jurisdictional predicate. *Id.* at 355. Notably, the Court has never adopted monetary requirement for cases involving the depletion of assets, applying only a *de minimis* standard. *United States v. Tillery,* 702 F.3d 170, 175 (4th Cir. 2012).

Although *Williams* addresses situations in which the defendant targeted an individual while they are engaged in business activities, recent decisions have addressed instances where homes are targeted. In *U.S. v. Taylor*, No. 13-4316, --- F.3d ---- 2014 WL 2535474 (4th Cir. 2014), the defendant was charged with a Hobbs Act violation after he targeted and robbed a number of marijuana dealers at their homes, often stealing only what valuables they had on their person. *Taylor*, 2014 WL 2535474 at 1*–2*. In upholding the conviction, the United States Court of Appeals for the Fourth Circuit held that the jurisdictional element of a Hobbs Act violation can be met under the depletion of assets theory when an offender attempts to rob a drug dealer. *Id.* at *6. The Court

additionally held that it was "not dispositive that the robberies involved the invasion of the victims' homes," noting that "many businesses, including illegal drug enterprises, operate out of homes." *Id.* at *5. Moreover, the United States Court of Appeals for the Third Circuit held that "the locus of commercial activity is not the litmus test of a Hobbs Act violation"; accordingly, the jurisdictional predicate will be met where the defendant "deliberately sought to rob business owners to obtain proceeds of businesses engaged in interstate commerce." *Id.* (quoting *U.S. v. Powell* 693 F.3d. 398, 405 (3d Cir. 2012). In a similar case involving the depletion of assets theory, the First Circuit held that the "[d]epletion of assets of a business engaged in interstate commerce is a common method for demonstrating that a robbery had an effect on interstate commerce . . . This is so even if the business's assets were stolen from a home." *U.S. v. Jimenez-Torres*, 435 F.3d 3, 9 (1st Cir. 2006).

In this case, Petitioner was charged with Conspiracy to Commit a Hobbs Act Robbery in violation of 18 U.S.C. § 1951 due to his participation in a scheme to take narcotics and narcotics proceeds from the home of the victim. As previously discussed, through the Petitioner's own stipulations, the testimony of his co-conspirators, and the testimony of the victim, the express reason for undertaking the robbery was to procure drugs. *See* Plea Agreement, 9–10, ECF No. 101; *USA v. Jones et al.,* RDB-10-232, Plea Agreement and Supplement, ECF. Nos. 72, 73; *USA v. Jones et al.,* RDB-10-232, Plea Agreement and Supplement, ECF. No. 82, 83. Specifically, the factual stipulation of Petitioner's plea agreement stated that he and his co-conspirators "agreed to break into the home . . . for the purpose of attempting to steal drugs and money they believed to be stored within that residence by a local drug dealer." Plea Agreement, 9, ECF No. 101. Petitioner also stipulated to drugs and money being located in the areas where his co-conspirators attempted to flee the residence. *Id* at 10. Notably, even if the ultimate goal of the robbery was to procure money rather than drugs, the jurisdictional predicate requirement would still be met on the "depletion of assets" theory. *See Jimenez-Torres*, 435 F.3d at 9. The two hundred fifty dollars taken from the victim

would easily meet the *de minimis* standard applied to other Hobbs Act violations.  *See Tillery*, 702 F.3d

at 175.  Therefore, regardless of whether procuring drugs or money were the motive for the robbery,

the jurisdictional predicate is easily met.

While Petitioner claims that jurisdiction is also improper under the Supreme Court's

commerce clause decisions, the Supreme Court has repeatedly upheld federal jurisdiction under the

commerce clause where the activity in question affects interstate commerce solely in the aggregate.

*See Gonzalez v. Raich*, 545 U.S. 1, 18–19, 22 (2005); *Wickard v. Filburn,* 317 U.S. 111, 128–29 (1942).

Collectively, *Wickard* and *Raich* have stood against the reduction of federal jurisdiction in commerce

clause cases, which began following *Lopez* and *Morrison*.  In *Raich* the Court crucially held that where

the underlying activity is economic — which the trade in illegal drugs is — the aggregation of

individual activity is permitted to find federal jurisdiction.   *Raich,* 545 U.S. at 24.   Given the

underlying action in this case is in fact economic, jurisdiction is proper in this case.

## III. The Use of Facts Contained in the Dismissed Counts That Were Not Admitted To or Found by a Jury

Petitioner maintains that the sentence rendered by this Court violated the Fifth and Sixth

Amendments due to the use of facts which were neither admitted to nor found by a jury.  This

ground for 18 U.S.C. § 2255 relief was raised in a Supplement to the original Motion to Vacate.  Am.

to Mot. to Vacate, ECF No. 155.  Petitioner cites *Alleyne v. United States*, 133 S.Ct. 2151 (2013), and

*Descamps v. United States*, 133 S.Ct. 2276 (2013), for the proposition that the sentencing procedure

used by this Court was faulty.  In reference to *Alleyne*, Petitioner claims that the sentence should be

vacated because this Court erred in enhancing Petitioner's sentence on the basis of the

"brandishing" of a weapon.  Citing *Descamps*, Petitioner additionally claims that the Supreme Court

barred this Court from utilizing the sentencing mechanism which designated Petitioner a "career

offender."  This claim is premised on the holding of *United States v. Royal*, 731 F.3d 333 (4th Cir.

2013), which maintained that Maryland's second degree assault offense was no longer a predicate

offense for Armed Career Ciminal Act ("ACCA") sentencing enhancement.

In *Alleyne v. United States*, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), by holding that any fact that increases the mandatory minimum sentence for a crime is an element of crime — as opposed to a sentencing factor — that must be submitted to the jury. *Alleyne,* 133 S.Ct. at 2156.  More specifically, the Court maintained that any finding as to whether a defendant had brandished a firearm in connection with crime of violence was an element of a separate offense that had to found by jury because it would elevate mandatory minimum term from five to seven years. *Id.* at 2162.

However, *Alleyne* is not applicable to the sentence rendered by this Court.  In *Alleyne,* the petitioner's sentence was vacated after the sentencing court increased the mandatory minimum sentence despite the fact that the jury never found that the petitioner "brandished" rather than "carried" a weapon in the commission of a violent crime.  *Alleyne,* 133 S.Ct. at 2155–56.  In contrast to the defendant in *Alleyne,* Petitioner clearly admitted to brandishing a weapon in his guilty plea stipulation.   Specifically, Petitioner stipulated that "[w]hile Taylor held the gun on Ms. Fulton, [Petitioner] demanded that she tell them where the drugs and money were."  Plea Agreement, 9, ECF No. 101.  Therefore, Petitioner fails to raise a cognizable claim to relief under *Alleyne.*

In *Descamps v. United States,* the Supreme Court held that sentencing courts may only apply a "modified categorical approach" in enhancing an individual's sentence in a small set of circumstances.  *Descamps*, 133 S. Ct. at 2279–80.  Supporting this contention, the Supreme Court held the modified categorical approach "serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps*, 133 S. Ct. at 2283.  The Supreme Court also held that sentencing enhancements which utilize definitions of predicate offenses "categorically broader than the generic offense" were impermissible due to "concerns that

would arise from sentencing courts' making factual findings that properly belong to juries." *Descamps*, 133 S. Ct. at 2280. Analyzing the statute imposing the enhancement, 18 U.S.C.A. § 924(e)(1), the Court found that Congress clearly indicated that sentencing courts should "look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* (quoting *Taylor v. U.S.*, 495 U.S. 575, 600 (1990)). Following *Descamps*, the United States Court of Appeals for the Fourth Circuit held in *Royal* that Maryland's second degree assault offense could not be a predicate offense under the Armed Career Criminal Act (ACCA) because it did not comport with the ACCA's definition of a "violent felony." *Royal*, 731 F.3d at 341–42. Applying the traditional categorical approach, which "looks only to the statutory definition of the state crime and the fact of conviction to determine whether the conduct criminalized," the Fourth Circuit held that because Maryland's second degree assault offense "reaches any unlawful touching, whether violent or nonviolent and no matter how slight," it could not be considered a predicate "violent felony" under 18 U.S.C.A. § 924(e)(2)(B). *Royal*, 731 F.3d at 341, 342.

Petitioner's contention that the sentence imposed by this Court is impermissible following the holdings in *Descamps* and *Royal* is fundamentally flawed. Even assuming that the second degree assault charge was rendered inapplicable under *Royal*, Petitioner would still qualify under the "career offender" designation of U.S.S.G § 4B1.1[3] because of his previous convictions for armed robbery and a drug offense. Ct. Tr. 17–18, ECF No. 137. The armed robbery offense, specifically discussed at sentencing, contained a notation stating that Petitioner was tried as an adult and therefore over the age of eighteen for the purposes of career offender enhancements. *Id.* The Fourth Circuit has previously ruled that an offender who is under the age of eighteen but tried as an adult is considered

---

[3] A defendant is considered a "career offender" if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least *two* prior felony convictions of either a crime of violence or a controlled substance offense.

an adult for the purpose of "career offender" designation. *U.S. v. Potts*, 91 Fed. Appx. 854, 856 (4th Cir. 2004). Furthermore, it is clear that the armed robbery charge met the mandate of the sentencing guidelines maintaining "only those that resulted in adult sentences of imprisonment exceeding one year and one month" would be counted as a requisite offense for "career offender" designation. U.S.S.G. § 4A1.2, comment. (n.7). Therefore, even if the second degree assault charge was discarded, the third provision of the "career offender" enhancement would be satisfied, as there are two independent prior felony convictions of either a crime of violence or of a controlled substance offense. For these reasons, *Descamps* and *Royal* are not applicable to Petitioner.

## IV. Petitioner's Motion to Amend

Petitioner filed a Motion to Amend on June 19, 2014, seeking to add an additional basis for relief from the sentence imposed by this Court. Mot. to Amend, ECF No. 160. Namely, Petitioner contends that the misapplication of the sentencing guidelines in his case was a "fundamental miscarriage of justice" which should be remedied by this Court. *Id.* at 1–2. Pursuant to Rule 16 of the Federal Rules of Civil Procedure, after the deadline for amendment of pleadings provided in the Court's Scheduling Order has passed, a plaintiff must show good cause why leave to file an amended complaint should be granted. Therefore, "[t]he analysis under Rule 16 is less focused on the substance of the proposed amendment and more concerned with the timeliness of the motion to amend 'and the reasons for its tardy submission.'" *CBX Techs., Inc. v. GCC Techs., LLC*, No. JKB-10-2112, 2012 WL 3038639, at *4 (D. Md. July 24, 2012) (quoting *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373-74 (D. Md. 2002)). The Court considers possible prejudice to the opposing party, the length of the delay and its impact on the proceedings, the reason for the delay, and whether the movant acted in good faith. *Tawwab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768-69 (D. Md. 2010). Good cause generally exists where at least some of the evidence necessary to prove a plaintiff's claim did not, despite reasonable diligence, come to light until after the amendment

deadline.  *Id.*  However, leave to amend should be denied if the plaintiff cannot account for the failure to discover such evidence earlier, or if that failure was the result of carelessness.  *Id.*

Only if the plaintiff meets the burden of showing "good cause" does the Court's inquiry shift to the more liberal standard set forth in Rule 15 of the Federal Rules of Civil Procedure, which states that leave to amend should be "freely give[n] when justice so requires."  Leave to amend may still be denied, however, if:  (1) the new pleading would prejudice the opposing party; (2) the moving party has acted in bad faith; or (3) the new pleading would be futile.  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing."  *Id.* at 427.  Moreover, amendment is futile if the complaint as amended could not withstand a motion to dismiss.  *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).  If a District Court denies leave, it must state justifying reasons.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Petitioner's Motion to Amend lacks merit on both procedural and substantive bases and is therefore futile under Rule 15 of the Federal Rules of Civil Procedure.  At the outset, it is apparent that the original Motion to Vacate was filed over a year before the latest Motion to Amend.  *See* Mot. to Vacate, ECF No. 150; Mot. to Amend, ECF No 160.  Moreover, Petitioner was already afforded the opportunity to supplement the Motion to Vacate as a matter of course to raise a separate ground for relief.  *See* Supplement to the Motion to Vacate, ECF No.  155.  While Petitioner may contend that the complaints in the Motion to Amend "relate back" to the original Motion to Vacate, it is clear that the applicable case law holds that these newest allegations arise from a different "conduct, transaction, or occurrence," in violation of Federal Rule of Civil Procedure 15(c)(2).  *See Pittman v. US,* 209 F.3d 314 (4th Cir. 2000); *Mayle v. Felix*, 545 U.S. 644 (2005).  In *Pittman*, the United States Court of Appeals for the Fourth Circuit denied the petitioner's Motion to Amend when it did not relate back to the *original pleading*, citing the language of Rule 15(c)(2).  *Pittman*, 209 F.3d at 317.

Moreover, the Court in *Pittman* found that challenges to sentencing enhancements were of a different "time and type" than challenges based on jurisdiction or ineffective assistance of counsel. *Pittman*, 209 F.3d at 318.  The Supreme Court utilized this same narrow reading in *Mayle*, reasoning that that a more expansive definition of "conduct, transaction, or occurrence" would allow "virtually any new claim introduced in an amended petition [to] relate back."  *Mayle*, 545 U.S. at 657. Therefore, given Petitioner's original Motion to Vacate only raised claims based on ineffective assistance of counsel and did not mention the challenge to the sentencing enhancements, these newest allegations do not relate back to the original complaint.  *See* Mot. to Vacate, ECF No. 150; Mot. to Amend, ECF No 160.

Moreover, amendment in this case would be futile.  In the Motion to Amend, Petitioner attacks the sentence as a "fundamental miscarriage of justice" under the holding of *Whiteside v. United States*, 748 F.3d 541 (4th Cir. 2014) due to the misapplication of the United States Sentencing Guidelines.  Mot. to Amend, 1–2, ECF No. 160.  As previously discussed, the sentencing guidelines were applied correctly given there are two valid offenses under the third provision of U.S.S.G § 4B1.1.  Petitioner also seeks to modify the sentence on the basis that this Court lacked jurisdiction. This is nothing more than a bald challenge against the sentence rendered, as the case cited by Petitioner has no bearing on whether this Court had jurisdiction to hear the case.  Therefore, Petitioner's Motion to Amend is denied.

CONCLUSION

For the reasons stated above, Petitioner's Motion to Vacate, Set Aside or Correct Sentence (ECF No. 150), Supplement to the Motion to Vacate, Set Aside or Correct Sentence (ECF No. 155), and Motion to Amend (ECF No. 160) are DENIED.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000).  A petitioner satisfies this standard by

demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. *Miller-El v. Cockerell*, 537 U.S. 322, 336–38 (2003); *Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows

Dated: July 28, 2014

_____/s/_____
        Richard D. Bennett
        United States District Judge